IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

GREGG A. SPINDLER AND SUSAN L.
SPINDLER, D/B/A SGS STATISTICAL SERVICES,

Plaintiffs,

v.                                                                    Civil Action No.

VIRGINIA ELECTRIC AND POWER COMPANY                5:15-cv-779 (TJM/TWD)
D/B/A DOMINION VIRGINIA POWER; AND
NORTH AMERICAN TRANSMISSION FORUM,
INC.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## DISPUTED JURY INSTRUCTIONS AND JURY VERDICT FORM

Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

Meghan H. Magruder (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
mmagruder@kslaw.com
bkeel@kslaw.com

**Attorneys for Defendants**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.     ORDER OF INSTRUCTIONS ................................................................................ 1

II.    PROPOSED BREACH OF CONTRACT INSTRUCTION. ............................................ 2

      A.    Elements: Reference to "SGS Study Deliverables" and "Similarities" Is Improper ........................................................................................................ 2

      B.    Additional Required Instructions Based on Proofs at Trial: Identification of Eight Items at Issue .......................................................................................... 5

      C.    Damages: Explanation of Limits of Any Award Based on Collateral Lost Profits Caused by Third Party Actions Is Required ..................................... 5

III.   PROPOSED TRADE SECRET MISAPPROPRIATION INSTRUCTION. .................... 6

      A.    Elements in Pre-Trial Proposals: Dominion Should Not Be Included; Alleged Trade Secrets Must Be Identified; Explanation of Non-Confidential SGS Summary Is Required; New Claim of Combination Trade Secret Is Improper; "Improper Means" Instruction Should Not Include "Should Have Known" Standard; No Support for "Two Indicators of Use" of a Trade Secret Instruction. 6

      B.    Additional Required Instructions Based on Proofs at Trial: Matters of General Knowledge Cannot Be Trade Secrets and Merely Declaring Trade Secret or Confidential Status Is Not Sufficient .................................................... 12

      C.    Damages: No Instruction on Any New Theory of Damages ............................... 14

IV.   PROPOSED UNFAIR COMPETITION INSTRUCTION. ............................................ 15

      A.    Elements: Instruction Required to Ensure No Decision Based on Theory of Relief that Is Preempted by Federal Copyright Law ......................................... 15

      B.    Damages: No Instruction as to New Theory of Damages and Instruction Required as to Overlap with Other Claims and No Duplicate Recovery for Same Loss ..... 20

V.    OBJECTION TO ANY PUNITIVE DAMAGES INSTRUCTION. ............................... 21

VI.   PROPOSED JURY VERDICT FORM. ........................................................................ 24

## INTRODUCTION

Defendants Virginia Electric and Power Company ("Dominion") and the North American Transmission Forum, Inc. ("NATF") (collectively, "Defendants") submit this brief in support of their proposed jury instructions (Dkt. No. 130) and in objection to certain of Plaintiffs' Gregg Spindler and Susan Spindler, d/b/a SGS Statistical Services (collectively, "SGS" or "Plaintiffs") proposed jury instructions (Dkt. No. 119.)   Defendants also propose additional instructions supported by the evidence herein as noted below.

## ARGUMENT

### I.   ORDER OF INSTRUCTIONS

As an initial matter, the Court should follow Defendants' proposed order for the substantive charges, specifically: (1) breach of contract, (2) trade secret misappropriation, and (3) unfair competition. Apart from the fact that it follows the same order as the causes of action in the Complaint, Defendants' proposed order is also the most logical order in which to instruct the jury on the substantive charges. All three claims are ultimately premised on the threshold question of whether Dominion breached its contract in sharing the eight claimed trade secrets with NATF, as SGS has not proffered any other way by which NATF wrongfully acquired the alleged trade secrets but through Dominion. Thus, the jury will first need to consider whether Dominion shared the eight claimed trade secrets with NATF in breach of its agreement before it can consider whether NATF misappropriated those secrets or engaged in unfair competition. Accordingly, the jury should first consider the breach of contract claim before considering the trade secret misappropriation or unfair competition claims. *See Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 441 n.13 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) (noting that instructing claim with threshold issue first was appropriate as such order "provided a logical structure for the jury to consider its findings of fact"); *People v. Velez*, 265 A.D.2d 162,

162 (1st Dep't 1999) (lower court exercised its discretion in selecting a jury charge order that "followed a logical pattern").

## II.     PROPOSED BREACH OF CONTRACT INSTRUCTION.

### A.     Elements: Reference to "SGS Study Deliverables" and "Similarities" Is Improper

The parties have submitted very different instructions regarding the breach of contract claim. SGS's proposed instruction posits the key element as a requirement of proof "that Dominion breached the contract by using the SGS Study Deliverables as a template for the development of the NATF Report." Defendants' proposed instruction more properly and accurately clarifies that the issue to be decided by the jury is whether the contract prohibited Dominion from disclosing eight (8) specific items that SGS contends are proprietary and that are supposedly not reflected in the non-confidential SGS Summary and whether any of those items were actually disclosed by Dominion in breach of the contract.

SGS's proposed breach of contract instruction attempts to re-litigate an issue that the Court has already decided in its summary judgment decision. Specifically, SGS's proposed instructions that Dominion could have breached its contract by "us[ing] the SGS Study Deliverables to develop the competing NATF Report" or "by using the SGS Study deliverables as a template for the development of the NATF Report" are contrary to the Court's interpretation of the contract and the plain language of the contract itself. (Dkt. No. 119 at 10 (emphasis added).)

The Court has already held, as a matter of law, that the unambiguous language of the SGS Terms of Use permitted Dominion to "release and reproduce the [SGS] Summary" at its discretion. (*See* Dkt. No. 105 at 20-21 (holding that "the terms of the agreement in question explicitly permitted Defendants to disclose information from the Summary."); *id.* at 34 ("What the contract means by the language in Section 1.8 is that the SGS Study cannot be shared, except

for the parts of the study that are provided in the SGS Summary.").) Disclosing or sharing the SGS Summary, therefore, cannot support a claim for breach of contract (or any other claim). (*See id.* at 34.) The issue to be tried on the breach of contract claim is whether Dominion disclosed to the Forum anything confidential owned by SGS which, as a matter of law, cannot be anything disclosed in the SGS Summary.

Instructing the jury that the contract could be breached through any use or disclosure of the "SGS Study deliverables" (which include the SGS Summary) is contrary to this holding and suggests that disclosure of the SGS Summary is prohibited by the contract. Such an instruction is improper, irrelevant, and confusing. Also, not every bit of information that might appear in the voluminous, nearly 2,000 page SGS Study is confidential. By failing to describe the specific information in the SGS Study that is actually at issue in the action, SGS's instruction suggests to the jury that every word of SGS Study could be confidential, which is not the case. *See Forest Labs., Inc. v. Lowey*, No. 7657, 1982 WL 52211, at *19 (N.Y. Sup. Ct. Oct. 25, 1982), *aff'd*, 106 A.D.2d 368 (2d Dep't 1984) ("[A] contract must not be so vague and overbroad that it is impossible to determine what the [drafter] is attempting to protect as confidential information.").

The final paragraph of SGS's proposed instruction goes even further and contends that the jury could find that Dominion breached its contract if "the similarities between the SGS Study deliverables and the NATF Report indicate that Dominion used the report in violation of the Terms of Use." (Dkt. No. 119 at 10). SGS bears the burden of proving by a preponderance of the evidence that Dominion has breached its contract by disclosing SGS confidential material covered by the contract. SGS confidential material could <u>not</u> include anything reflected in the SGS Summary (as per the contract terms and the Court's holding), or anything otherwise publicly available or previously known to Dominion. While alleged similarities between *the*

*methods used by the parties* could be relevant (if those methods are proven to be SGS trade secrets covered by the contract and those methods are shown to have been disclosed by Dominion in violation of the contract), any alleged visual or organizational similarities between the "SGS deliverables" and the NATF Report are not relevant and suggesting otherwise is confusing and prejudicial.

This is not a copyright infringement case where a jury is being asked to assess substantial similarity in appearance. Moreover, the contract at issue here permitted Dominion to "reproduce" the SGS Summary, which essentially means that Dominion would have been well within its rights under the contract to use the SGS Summary as a template. (The evidence shows that Dominion did no such thing, in any event.)  Nevertheless, instructing the jury to consider "similarities" between the SGS Study deliverables and the NATF Report on the breach of contract claim distorts SGS's burden of proof in an improper attempt to sway the jury into believing that there could be some liability here just because both parties produce transmission reliability benchmarking reports including standard charts and graphs regarding some of the same generic industry performance measures.

By contrast, Defendants' proposed instruction (Dkt. No. 130 at 4) reflects the Court's summary judgment holding and instructs the jury on the legal boundaries of the contract already determined by the Court—namely, that it was permissible under the contract for Dominion to reproduce or disclose the SGS Summary or its contents to whomever it wanted. Defendants' proposed instruction also clarifies that Plaintiffs' breach of contract claim relates to the eight particular items that Plaintiffs have alleged constitute the confidential trade secrets at issue, and not to general "similarities." Therefore, the Court should instruct the jury in accordance with Defendants' proposed instruction.

B.   Additional Required Instructions Based on Proofs at Trial: Identification of Eight Items at Issue

Defendants' proposed instruction describes for the jury that its deliberations should focus on the eight items that SGS claims are proprietary, confidential information that Dominion shared with NATF in breach of the agreement. However, for the avoidance of doubt and consistent with Defendants' proposed instruction on trade secret misappropriation, Defendants propose an additional instruction specifically including the eight items that SGS contends contain the proprietary, confidential information that Dominion allegedly shared with NATF in violation of the contract. *See* Section III(A), *infra*.

C.   Damages: Explanation of Limits of Any Award Based on Collateral Lost Profits Caused by Third Party Actions Is Required

SGS's proposed instruction on lost profit damages available for breach of contract is vague and likely to confuse a jury. (Dkt. No. 119 at 11). Without explaining what general damages or consequential damages are, the instructions posit that the proper measure of damages "is the amount necessary to put SGS in the same economic position it would have occupied if Dominion had not breached the contract" and that lost profits are available if they are the "natural and probable consequence of Dominion's breach." These vague instructions suggest that lost profits are readily recoverable and fail to provide adequate guidance to the jury on the appropriate measure of lost profit damages available for a breach of contract under New York law.

Defendants' proposed instruction removes legal jargon and describes lost profits damages directly. Clarity is required particularly as to lost profits such as those sought by Plaintiffs here, which seek to stick Dominion with responsibility for profits allegedly lost as a result of third parties declining to participate in the SGS Study. (Dkt. No. 130 at 12). Under New York law, to recover lost profits as general damages, the profits must be "money that the breaching party

agreed to pay under the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007). SGS's instruction that lost profits may be awarded as general damages where they are "the natural and probable consequence of Dominion's breach of contract" suggests that such damages may be awarded for an infinite amount of "natural" consequences of a breach, including collateral lost profits from actions taken by third parties. That is not the case. Lost profits from collateral third party business arrangements are recoverable in breach of contract actions "only if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties." *Id.* Defendants' proposed instruction clarifies the standard and, should the Court determine that Plaintiffs have put forth any evidence that would allow such a claim to go to a jury, would provide sufficient information for the jury to understand the specific and limited circumstances in which lost profit damages may be awarded for losses attributable to other SGS customers.

## III.    PROPOSED TRADE SECRET MISAPPROPRIATION INSTRUCTION.

A.    Elements in Pre-Trial Proposals: Dominion Should Not Be Included; Alleged Trade Secrets Must Be Identified; Explanation of Non-Confidential SGS Summary Is Required; New Claim of Combination Trade Secret Is Improper; "Improper Means" Instruction Should Not Include "Should Have Known" Standard; No Support for "Two Indicators of Use" of a Trade Secret Instruction[1]

As a threshold matter, Defendants object to any trade secret misappropriation instruction that includes such a claim against Dominion. The breach of contract claim and the asserted trade secret misappropriation claim against Dominion are based on the same theory—that Dominion

---

[1] *See* Plaintiffs' proposed charges at Dkt. No. 119 at 2-5 and Defendants' proposed charges at Dkt. No. 130 at 6-8.

wrongfully disclosed and used SGS's trade secrets in breach of an agreement. SGS's misappropriation claim against Dominion is therefore duplicative of, and fully supplanted by, the breach of contract claim. *See Document Sec. Sys., Inc., v. Coupons.Com, Inc.*, No. 11-CV_6528 CJS, 2013 WL 1945954 (W.D.N.Y. May 9, 2013) (barring trade secret misappropriation claim as duplicative of breach of contract claim). Plaintiffs' own instructions further confirm that to be liable Dominion also must have "used the trade secret…in connection with [Dominion's] business." Dominion is not in competition with Plaintiffs and there is no allegation that Dominion "used" any of the alleged trade secrets at all in its business. Accordingly, the jury should not be instructed that it could also find liability for Dominion under a trade secret misappropriation theory.[2] Plaintiffs' jury instructions on trade secret misappropriation include Dominion and should be rejected on that basis alone.

Plaintiffs' proposed instructions should also be rejected because they fail to identify the alleged trade secrets at issue. In order to assist the jury, Defendants request that the Court include in its final instruction a list of SGS's eight alleged trade secrets. The full SGS Report consists of nearly 2,000 pages of deliverables, which include an approximately thirty page summary and various other materials. Given the breadth and complexity of the full report, identification of the eight alleged trade secrets will assist the jury by allowing it to focus on the items actually at issue in the case. This is a necessity in this case when both parties' deliverables include numerous

---

[2] A review of Plaintiffs' proposed instruction for trade secret damages further demonstrates the error in attempting to include Dominion in the trade secret claim. Plaintiffs posit that the jury should consider whether the alleged trade secrets "afforded …Dominion a competitive advantage" or "a head start" in its business. (Dkt. No. 119 at 6). Dominion does not compete with Plaintiffs in any sense and there is no allegation that Dominion used the alleged trade secrets in its business whatsoever, much less used them to get a "head start."

generic measures that are not protectable trade secrets and any overlap in generic measures is irrelevant.

Defendants also request that the Court provide the jurors with specific instructions reflecting its prior holding that information or methods disclosed within the SGS Summary cannot be a trade secret, because the SGS Terms of Use permitted disclosure of the Summary. (*See* Dkt. No. 105 at 21 (holding that "the terms of the agreement in question explicitly permitted [Dominion] to disclose information from the [SGS] Summary").) Absent such an instruction, the jury may be confused about what role the SGS Summary should play in its deliberations.

Defendants further object to SGS's proposed instructions regarding trade secret rights in "a combination of characteristics or components…." (Dkt. No. 119 at 2). Throughout this litigation, SGS has specifically identified eight alleged trade secrets. (*See* Dkt. No. 105 at 15 ("The parties agree that eight purported trade secrets for the basis for Plaintiffs' misappropriation claim.")). Now, in its proposed jury instructions, SGS suggests that it has an additional alleged trade secret in a "unique combination of elements." Putting aside untimeliness, SGS has failed to identify this alleged "combination" trade secret with any particularity, and thus it should be precluded from positing such a theory.  *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292 (DLC), 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008) ("New York and Second Circuit law establish that compilation trade secrets are protectable but…the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique."); *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 271 (S.D.N.Y. 2014), *aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) ("A plaintiff asserting a combination trade secret must demonstrate that the way in which the publicly-available components fit

together is unique and not publicly-known."). Indeed, cases based on misappropriation of "combination" trade secrets often involve a trade secret that necessarily needed to be a particular combination in order to function, like a computer program or a chemical compound recipe. *See, e.g., Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (finding combination trade secret protection in computer software product); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 743 (2d Cir. 1965) (finding combination trade secret in process, design, and operation of stirred autoclave reactor). Plaintiffs' alleged trade secrets do not meet that criteria and consist merely of separate methods or concepts that are overall generally known and generic.  Consequently, any instruction about combination trade secrets is irrelevant, misleading, and likely to confuse the jury.

Further, Defendants object to SGS's proposed instruction stating that "In determining whether any of Plaintiffs' information in this case qualifies as a trade secret, you should consider the factors that you deem relevant" as vague and likely to confuse the jury. (*See* Dkt. No. 119 at 2). Instead, the Court should instruct the jury that it may consider the six factors employed by Second Circuit courts, and separately identified in both parties' proposed instructions. *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 n.1 (2d Cir. 1993), *abrogated on other grounds, Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) (identifying six factors to be considered in determining whether a plaintiff possessed a trade secret).

Defendants also object to SGS's proposed instruction regarding the second element of trade secret misappropriation claims, namely the requirement that the alleged trade secrets be acquired by "improper means." First, SGS's proposed instructions relating to breach of an agreement or confidential relationship are irrelevant and likely to confuse the jury. It is

undisputed that NATF did not have a contractual or confidential relationship with or duty toward SGS.[3] To instruct the jury otherwise is superfluous and unnecessary.

Second, SGS's instruction on "improper means" fails to adequately describe what constitutes "discovery by improper means" under New York law and misstates the knowledge requirement. The Restatement defines "improper means" as "fraudulent misrepresentations to induce disclosure, tapping of telephone wires, eavesdropping or other espionage." Restatement (First) of Torts § 757, cmt. f, (Am. Law. Inst. 1939). Plaintiffs' proposed instruction suggests that "Defendants' conduct is improper if they knew or should have known that they were acquiring a trade secret belonging to SGS." This misstates the standard for knowledge with respect to trade secret misappropriation claims under New York common law. Mere acquisition of trade secrets from another is insufficient to show improper means. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 28 (1st Dep't 2015) (allegation that defendant Pinterest received ideas from co-defendant Cohen with knowledge that they were not Cohen's ideas was insufficient to establish that Pinterest employed improper means to acquire the information). While the "knew or should have known" standard posited by Plaintiffs applies under the federal Defend Trade Secrets Act and under the model Uniform Trade Secrets Act (which was never adopted in New York), acquisition with knowledge that alleged secrets belonged to others alone is insufficient to establish a claim under New York common law. *See id.* at 31 ("[W]e have rejected the claim that

---

[3] While Dominion did have a contract with SGS, SGS cannot establish and has not even alleged that Dominion had any separate, non-contractual duty requiring that Dominion refrain from sharing any SGS information. *See Document Sec. Sys.*, 2013 WL 1945954, at *5 (finding no implied-in-law duty where "the parties dealt at arms' length and had an express written confidentiality agreement covering the subject matter of the dispute"). In any event, as noted previously, the Court should not instruct the jury with respect to Dominion on the misappropriation claim at all, as the claim is duplicative of SGS's breach of contract claim against Dominion. *Id.*

bad faith is established merely because Pinterest may have known that the ideas given to them by Cohen were not his own."). *See also* Restatement (First) of Torts § 758 (Am. Law. Inst. 1939); *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23, 2018) (describing the standards for a claim of trade secret misappropriation under New York common law and under the federal Defendant Trade Secrets Act). Defendants' instruction describes the correct standard in a succinct, neutral way, designed to assist the jury in evaluating the claim.

Third, SGS's proposed instruction paragraph that begins "Two indicators of use of a trade secret … as a result of improper means …" is misleading and likely to confuse the jury. The statement that one indicator of use is "a party's access to a trade secret and subsequent production of a 'substantially similar' product" fails to clarify that such an inference is not appropriate where the defendant's product "lack[s] [] suspicious similarity to the [plaintiff's] secrets."[4] *Grynberg v. BP, P.L.C.*, No. 06 Civ. 6494(RJH), 2011 WL 1161540, at *7 (S.D.N.Y. Mar. 30, 2011) (emphasis added); *see also Big Vision*, 1 F. Supp. 3d at 274 ("Plaintiff has failed to demonstrate substantial similarity and thus cannot show that [Defendant] misappropriated its alleged trade secret."); *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, No. 04 CIV. 3531 LTS HBP, 2009 WL 7133660, at *20 (S.D.N.Y. Aug. 5, 2009), *report and recommendation adopted in part, rejected in part*, No. 04 CIV. 3531 LTS HBP, 2010 WL

---

[4] Further, although New York case law occasionally references "substantial similarity" in the context of trade secret misappropriation claims, Defendants have found only one case in which the court found that a plaintiff stated a claim on those grounds. *See Fabkom, Inc. v. R.W. Smith & Assocs., Inc.*, No. 95 CIV. 4552 (MBM), 1996 WL 531873 (S.D.N.Y. Sept. 19, 1996). Moreover, in that case, the court addressed the issue before discovery on a preliminary injunction motion, and specifically noted that disputes regarding whether there were actual, actionable similarities in the computer code at issue in that case would "be resolved at a later stage of the proceedings." *Id.* at *12.

4780772 (S.D.N.Y. Nov. 22, 2010) (finding a reasonable jury could not render a verdict in plaintiff's favor where the "evidence in the record indicates no statistical correlation or similarity between any of the sequences used by the defendants"). Indeed, it is clear that any such similarity *must be with respect to the unique markers of the specific, alleged trade secrets at issue* and not in a vastly more general "substantial similarity" sense in order for any inference to apply. *Grynberg,* 2011 WL 1161540 at *7. As noted previously, this is not a copyright infringement case and the jury must be clearly instructed so they are not confused into believing that they are required to assess similarity in appearance between the NATF Report and the SGS Summary. The instruction also fails to clarify that "a trade secret owner cannot prevent others from making similar products that are not derived from the trade secret." *Advanced Analytics,* 2009 WL 7133660 at *20. As such, any similarity must be tied to the unlawful misappropriation of a valid trade secret.

In addition, SGS's proposed instruction that a "hastened" production "weighs heavily in favor of demonstrating improper use of a trade secret" is unsupported by New York law. Providing such an instruction will likely result in the jury applying more weight to production speed than is appropriate, even if there were evidence that the production of the NATF's report was "hastened". Plaintiffs' proposed instruction also has no basis in fact—as the evidence has shown, the effort leading to release of the Forum Report took nearly three years.

> B.    Additional Required Instructions Based on Proofs at Trial: Matters of General Knowledge Cannot Be Trade Secrets and Merely Declaring Trade Secret or Confidential Status Is Not Sufficient

Defendants propose two additional instructions to assist the jury in its deliberations of the trade secret misappropriation claim. Both instructions clarify the standard regarding the specific types of information that could be trade secrets and thus will provide additional guidance to the jury in their evaluation of the eight claimed trade secrets at issue.

First, Defendants propose an instruction stating: "Matters of general knowledge in an industry are not trade secrets. Special skills and knowledge of employees that they learned as part of their trade are also not trade secrets." *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292 (DLC), 2008 WL 463884, at *12 (S.D.N.Y. Feb. 20, 2008) ("Matters of general knowledge in an industry cannot be appropriated by one as his [trade] secret.") (internal quotation and citation omitted); *Molina v. Barany*, 56 N.Y.S.2d 124, 133 (N.Y. Sup. Ct. 1945) (failing to establish trade secret protection over employee's "skill and knowledge in his trade which he learned in the course of employment"). Given the specialized nature of transmission reliability benchmarking, such an instruction will assist the jury by focusing their deliberations on analysis of whether the eight alleged trade secrets are outside of the realm of general knowledge or skills gained as a member of the transmission reliability industry.

Second, Defendants propose an instruction stating: "Merely declaring that something is confidential or a trade secret is insufficient to establish that it is confidential or a trade secret. Merely precluding someone from reproducing, displaying, distributing, or creating derivative works of something also does not establish that it is confidential or a trade secret." *See Devos, Ltd. v. Record*, No. 15-CV-6916(ADS)(AYS), 2015 WL 9593616, at *9 (E.D.N.Y. Dec. 24, 2015) (noting that labeling information as "confidential" does not automatically create a protectable interest); *Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, No. C-12-3433 SC, 2013 WL 3483618, at *2 (N.D. Cal. July 8, 2013) ("Merely declaring that something is a trade secret does not make it so."); *Broker Genius, Inc. v. Zalta*, No. 17-cv-2099 (SHS), 2017 WL 5991831, at *21-*22 (S.D.N.Y. Dec. 4, 2017). This instruction will clarify that "secret" or "confidential" labels, without more, do not establish trade secret rights.

C.     Damages: No Instruction on Any New Theory of Damages[5]

Defendants object in full to SGS's proposed instruction on damages which adds a new, undisclosed claim regarding the alleged "benefits gained by NATF."  Throughout this litigation, SGS has proceeded on a lost profits theory of damages, claiming that essentially all of its customers who stopped purchasing the SGS Report between 2012 and 2017 did so because the NATF Report (issued in late 2013) reflected use of SGS's trade secrets, which had been disclosed to NATF by Dominion in breach of Dominion's contract and then used to develop the NATF Report. Now, in its proposed jury instructions filed a few weeks before trial, SGS improperly seeks an untimely expansion of this theory, stating that the jury could also award damages for  SGS's "out-of-pocket expenses" and "the monetary value" attributed to benefits NATF and/or Dominion received from using SGS's trade secrets. SGS's failure to identify this theory of damages earlier was neither substantially justified nor harmless and thus should be precluded under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

SGS served its initial Rule 26(a) disclosures on September 15, 2015, and supplemented those disclosures on September 28, 2016. In both instances, SGS indicated that it is seeking damages only for profits it supposedly lost by customers no longer purchasing the SGS Report and for the claimed "degradation" to the SGS Report that supposedly resulted from a reduced pool of customers. SGS's proposed damages expert likewise provided an estimate based solely on alleged lost profits. SGS should not be permitted to instruct the jury that additional damages are available to it through this backdoor attempt to expand its damages theory on the eve of trial. *See Videobox Networks, L.P. v. Durst*, 259 A.D.2d 429, 430 (1st Dep't 1999) ("Plaintiff's eve-of-trial motion to change its theory of damages…was properly denied on the ground that the delay

---

[5] *See* Plaintiffs' proposed charges at Dkt. No. 119 at 6-7 and Defendants' proposed charges at Dkt. No. 130 at 13.

in asserting this new theory was both prejudicial and inexcusable."); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (precluding plaintiff from presenting loss of an income-producing asset theory of damages at trial when theory had been "asserted just weeks before trial in the joint pre-trial order, long after the close of discovery"). To instruct the jury as to the availability of such damages would be erroneous.

Defendants also object to any reference to punitive damages in the instruction, because the facts do not warrant punitive damages, punitive damages are precluded by Rule 37(c)(1) or, at a minimum, bifurcation is appropriate. *See* Section IV, *infra*.

Rather than try to cherry-pick the handful of phrases in SGS's proposed instructions that are not objectionable, Defendants request that the Court accept their proposed instruction on damages for trade secret misappropriation, as their instruction recites in neutral language the standard for an award of lost profit damages under New York law.

## IV.   PROPOSED UNFAIR COMPETITION INSTRUCTION.

A.   Elements: Instruction Required to Ensure No Decision Based on Theory of Relief that Is Preempted by Federal Copyright Law[6]

Defendants have serious concerns regarding the merits of the unfair competition claim. Should the Court find that sufficient evidence exists to present such a claim to a jury, the overlap between trade secret misappropriation and unfair competition by misappropriation are such that, to avoid confusion, the jury needs a clear explanation of what the unfair competition claim means and what it does not mean.  For example, the instruction needs to clarify that any copyright-like claims are not available.

---

[6] *See* Plaintiffs' proposed charges at Dkt. No. 119 at 8 and Defendants' proposed charges at Dkt. No. 130 at 9-10.

Defendants' instruction continues beyond the basic description of unfair competition to provide additional explanation regarding the information upon which a misappropriation-style claim may be premised.  Specifically, Defendants' instruction clarifies that an unfair competition claim under New York law must be based upon the misappropriation of proprietary information. *See Schroeder v. Pinterest Inc.*, 133 A.D.3d at 31 n.11 (noting that a claim for unfair competition "cannot be premised upon misappropriation of publicly-available information")*; see also Demetriades v. Kaufmann*, 698 F. Supp. 521, 526 (S.D.N.Y. 1988) ("[A] claim of [unfair competition] must remain bottomed on the misappropriation of a property right belonging to another."). Moreover, because the unfair competition claim largely (but not entirely) overlaps with Plaintiffs' misappropriation of trade secrets claim and Plaintiffs will not be entitled to double-recovery to the extent that Plaintiffs succeed on the trade secret misappropriation claim and the overlapping portion of the unfair competition claim, Defendants present a jury instruction relating to unfair competition only as it relates to misappropriation of a property right other than a trade secret.

Defendants' instruction also clarifies that an unfair competition claim cannot be based on a property right that is copyrightable or otherwise covered by or subject to the federal copyright act, as claims over copyrightable expression are preempted under the federal Copyright Act. *See, e.g., Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (holding plaintiff's "unfair-competition and misappropriation claims, based solely on the copying of the protected expression in [sports-related] forms, are preempted by [the Copyright Act]"). For example, in *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291 (S.D.N.Y. 2007), the court held that the plaintiff's cause of action for unfair competition was preempted by the Copyright Act because the "core" of the unfair competition claim related to the plaintiff's

allegations that the defendant "plagiarized" its website and brochure "by copying text and language and using similar or the same formats, styles, quotes, concepts, fonts, hypertext placement, banner locations, and other qualities." *Id.* at 296.

Similarly, while SGS may proceed on theories of unfair competition based on the alleged bad faith misappropriation of trade secrets or other proprietary information not quite rising to the level of a trade secret, SGS cannot recover for unfair competition relating to the misappropriation of copyrightable expression, such as "similar or the same formats [and] styles" between the SGS Summary (or Extended Summary) and the NATF Report, because any claim over those elements is preempted by the federal Copyright Act. *Id. See also Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (unfair competition claim based on the misappropriation of plaintiff's "time, talent and effort" in creating a snowflake design was preempted); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010) (unfair competition claim based on misappropriation of indices containing published money market and certificate of deposit rates, which "required labor, skill, and expense to create and maintain," was preempted by the Copyright Act).

Moreover, the questioning and testimony elicited during the trial has only further emphasized the need for such a clarifying instruction so that the jury does not improperly consider preempted copyrightable expression as part of the unfair competition claim. For example, the following evidence has been presented at trial:

1. Gregg Spindler testified that the reports were similar based on "the coloration," "the esthetics of the document," "the ordering," "the layout," the "initial presentation of … lead off measures," the "appearance and coloration," the "strip

charts," the "hues of the colors," the "trend charts," the "bar charts," and the "look and feel"(*See* Tr. 452:3-454:12);

2. Douglas Mattox testified by deposition that similarities between the reports included "the bar graphs," "the charts," and "the colors of the graphs" (*See, e.g.,* Mattox Dep. 42:11-12; 70:15-71:11);

3. Shaker Manns testified by deposition that the reports "looked very similar," including "the layout," "the types of graphs chosen [and] the order [of the graphs]," and the "entire format" (*See, e.g.,* Manns Dep. 53:21-54:2; 63:14-25; 106:7-10);

4. Brian Starling was questioned regarding the similarities between the wording in the non-confidential SGS Summary introduction and the NATF Report introduction (*See, e.g.,* Tr. at 1228:16-19)

SGS's assertions that its deliverables (which are detailed reports and likely copyrightable) were used as a "template" to recreate the same "look and feel" are also copyright claims, not unfair competition by misappropriation claims. A claim for unfair competition cannot be based on alleged similarities in copyrightable expressions. Any attempt by SGS to base its claim on these elements is a copyright claim in disguise and must be preempted. *See Integrative Nutrition*, 476 F. Supp. 2d at 296. Therefore, if the Court believes that there is sufficient evidence to present this claim to the jury, the jury needs to be instructed that it must not consider this type of similarity in evaluating SGS's unfair competition claim.

Moreover, such an instruction is consistent with the Court's ruling in connection with Defendants' motion for summary judgment. (*See* Dkt. No. 105 at 29-32.) While the Court did not address Defendants' argument on preemption in its opinion, the Court implicitly acknowledged

that any claim for unfair competition must be based on something proprietary and, therefore, could not be based on any alleged "copying" of the SGS Summary. (*Id.* at 31 ("The Court finds that a reasonable juror could use this evidence to conclude both that NATF misappropriated the efforts and labors of Plaintiffs used to produce the ***SGS Report***...") (emphasis added).) Under the Court's ruling, any alleged copying must be related solely to proprietary elements of the SGS Report, not the SGS Summary (or the nearly identical SGS Extended Summary). In fact, in denying Defendants' motion on the unfair competition claim, the Court explicitly found issues of fact based on the deposition testimony of Manns and Maddox, which the Court interpreted as meaning that these witnesses "considered the NATF Report simply a 'copy' of the ***SGS Report***," not the SGS Summary. (*Id.* at 31 (emphasis added).) In other words, the Court decided that a trial was necessary to determine if there was any support for Plaintiffs' claim that there were trade secret materials or other proprietary material in the ***SGS Report*** that were similar or copied, not that there was anything in the SGS Summary that was similar or copied.  (*See id.*) Defendants' proposed instruction clarifies this issue.

The upshot of the summary judgment motion was that a trial was needed to assess whether there was trade secret or proprietary information that was in the SGS Report and not in the SGS Summary and misappropriated by Defendants.  After two weeks of trial, Defendants are at a loss to identify any evidence on what proprietary information Plaintiffs claim to own that was misappropriated in bad faith by NATF.  At best, Plaintiffs have submitted proofs only as to the alleged trade secrets and preempted copyrightable expression.  Neither Defendants nor a jury should be tasked with trying to figure out what it is that Plaintiffs' claim is allegedly (A) in the thousands of pages of the SGS Report; (B) not also in the SGS Summary; (C) constitutes some

protectable property right short of a trade secret that is not copyrightable; and (D) was misappropriated in bad faith.

Finally, Defendants' proposed instruction provides the jury with an explanation of what "bad faith" means in the context of an unfair competition claim. *See Big Vision*, 1 F. Supp. 3d at 275 ("Mere negligence or recklessness is insufficient to sustain this [unfair competition] claim; instead, a plaintiff must establish bad faith by showing that the defendant acted out of a dishonest purpose. Bad faith cannot be found where a defendant's alleged misconduct represents nothing more than having exercised its legal rights.") (internal quotations and citations omitted). Absent such an instruction, the jury may inappropriately apply a lower standard, such as negligence or recklessness. *Id.*

### B.   Damages: No Instruction as to New Theory of Damages and Instruction Required as to Overlap with Other Claims and No Duplicate Recovery for Same Loss[7]

Defendants object to SGS's proposed instruction stating: "You may choose to award damages solely for the amount of money or time SGS invested in developing the idea..." First, in all cases cited by both parties, courts are clear that the damages available for an unfair competition claim are "limited to profits that the plaintiff would have made but for the defendant's wrong." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 675 (S.D.N.Y. 2005), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) (internal quotation omitted).[8] Second, such an instruction is contrary to SGS's lost profits theory of damages that it

---

[7] *See* Dkt. No. 119 at 8; Dkt. No. 130 at 13.

[8] *See also Suburban Graphics Supply Corp. v. Nagle*, 5 A.D.3d 663, 666 (2d Dep't 2004) ("The measure of damages in a case of unfair competition is the amount which the plaintiff would have made but for the defendant's wrong"); *Stanacard, LLC v. Rubard LLC*, No. 12 CIV. 5176 (CM), 2016 WL 6820741, at *5 (S.D.N.Y. Nov. 10, 2016) ("Damages for unfair competition…are typically measured by plaintiff's lost profits resulting from defendant's improper conduct") (internal quotation omitted); *Allan Dampf, P.C. v. Bloom*, 127 A.D.2d 719, 719, 512 N.Y.S.2d

has developed throughout this litigation, and should thus be precluded under Rule 37(c)(1). *See* Section II(B), *supra*.

Defendants' more detailed instructions will provide the jury with additional guidance on how to calculate damages. For example, Defendants' instructions include a reference to any recovery awarded under the related trade secret claim. Such an instruction is required so as to avoid the jury inappropriately awarding double-recovery based on SGS's claims for trade secrets misappropriation and unfair competition. *Stanacard,* 2016 WL 6820741, at *5 ("[D]amages for unfair competition are only available to the extent that it does not compensate for actions already accounted for in the damages for misappropriation of trade secrets.").

Finally, Defendants object to any reference to punitive damages in the instruction, because the facts do not warrant punitive damages, punitive damages are precluded by Rule 37(c)(1) or, at a minimum, bifurcation is appropriate.  *See* Section IV, *infra*.

## V.   OBJECTION TO ANY PUNITIVE DAMAGES INSTRUCTION[9].

This is not a punitive damages case.  Plaintiffs acknowledged as much when they failed to disclose an intention to seek punitive damages in their Rule 26 disclosures. Accordingly, Defendants object to any jury instruction on the issue of punitive damages because SGS did not disclose its intention to seek punitive damages as required by Rule 26(a) of the Federal Rules of Civil Procedure.  *See Williams v. Boulevard Lines, Inc.*, No. 10-CV-2924(DF), 2013 WL 5652589, at *4 (S.D.N.Y. Sept. 30, 2013) (finding that plaintiff's Rule 26(a) disclosures were

---

116, 117 (1987) ("[T]he proper measure of damages for unfair competition…is the loss of profits sustained by reason of the improper conduct"); N.Y. Pattern Jury Instr.--Civil Division 3 G 4 Intro. 1 ("Damages recoverable for misappropriation of trade secrets is the loss of profits resulting from the defendant's actual diverting of customers.").

[9] *See* Plaintiffs' proposed charges at Dkt. No. 119 at 12 and Defendants' proposed charges at Dkt. No. 130 at 17-18.

inadequate for failing to disclose punitive damages sought and precluding plaintiff from seeking punitive damages at trial).

Moreover, there is no evidence to support any punitive damages charge in this case. Defendants would have moved for summary judgment on the punitive damages claim had Defendants known that Plaintiffs intended to pursue punitive damages at trial. "[I]n order to be entitled to punitive damages, a private litigant 'must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.'" *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D. 3d 48, 57-58 (1st Dept. 2015) (Defendant's conduct, while "clearly intentional," "distasteful," and "below any minimum standard of business practices and ethical behavior," did not "evince [] [the] high degree of moral turpitude and demonstrate[] such wanton dishonesty as to imply a criminal indifference to civil obligations" (citation omitted)).

In the event that the Court permits SGS to seek punitive damages despite its failure to comply with Rule 26(a), Defendants request bifurcation so that the jury can first assess liability, compensatory damages, and whether Defendants' conduct warrants an award of punitive damages under the applicable legal standards, before addressing the amount of any punitive award. *See Tyco Int'l Ltd. v. Walsh*, No. 02-CV-4633 (DLC), 2010 WL 3000179, at *1 (S.D.N.Y. July 30, 2010) ("[T]he preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages.") (internal citation omitted).

With respect to SGS's proposed instruction on punitive damages, Defendants object to the extent that it suggests that punitive damages are available in its breach of contract claim. *See*

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, No. 16-2913-CV, 2017 WL 5479463, at *2 (2d Cir. Nov. 15, 2017) ("Under New York law, punitive damages are recoverable in a breach of contract action where the 'conduct constituting, accompanying, or associated with the breach of contract' is (1) actionable as an independent tort, (2) sufficiently egregious, and (3) 'part of a pattern of similar conduct directed at the public generally.'") (citation omitted). SGS has not proffered any evidence demonstrating that Dominion's behavior with respect to its alleged breach of contract could come close to meeting the standard for punitive damages under a breach of contract claim. *See id.* Instructing the jury that such damages are available is therefore misleading and confusing.

Finally, should the Court instruct the jury on punitive damages over Defendants' objection, Defendants request that the Court instruct that the burden of proof for punitive damages is by clear and convincing evidence. *See Randi A.J. v. Long Island Surgi-Ctr.*, 46 A.D.3d 74, 86 (2d Dep't 2007) (holding that "trial court erred in failing to charge the jury that the standard of proof regarding the imposition of punitive damages was clear and convincing evidence") (internal quotation omitted); *Munoz v. Puretz*, 301 A.D.2d 382, 384, 753 N.Y.S.2d 463, 466 (1st Dep't 2003) ("In order to recover punitive damages, a plaintiff must show, by clear, unequivocal and convincing evidence…") (internal quotation omitted); *but see In re Seventh Judicial Dist. Asbestos Litig.*, 190 A.D.2d 1068, 1069 (4th Dep't 1993) (applying preponderance of the evidence standard). Punitive damages, by their very nature and purpose, are akin to a criminal penalty and the higher burden of proof should be applied. *See* Thomas J. Quigley, "The Standard for Determining Punitive Damages in New York" NYLJ June 6, 2011 (arguing that the clear and convincing standard applied in the First and Second departments,

rather than the preponderance standard applied in a lone (and old) Fourth Department case, is the correct burden of proof and should be charged by federal courts applying New York law).

## VI.  PROPOSED JURY VERDICT FORM[10].

Rule 49 of the Federal Rules of Civil Procedure allows courts to utilize special jury verdict forms, and "the formulation of special verdict questions rests in the sound discretion of the trial judge." *Gorecki v. Painted Pony Championship Rodeo, Inc.*, 6 F. App'x 103, 105 (2d Cir. 2001) (internal quotation omitted). In accordance with Rule 49, Defendants request that the Court adopt their proposed special jury verdict form, which is appropriately detailed to aid the jury in evaluating the complex components of each claim while still remaining succinct and narrowly focused. *Cf. Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 82 (N.D.N.Y. 2005) ("To aid in [the deliberation] process the jury was presented with a verdict form which consisted of thirty-eight questions, several of which contained subparts.").

First, unlike SGS's proposed questions, Defendants' proposed questions generally break down the elements of each cause of action so that the jury could appropriately evaluate each element in turn. Indeed, SGS's proposed instruction for unfair competition (*see* Question 2) does not even contain any reference to the "bad faith" element of the claim, which could result in the jury's failure to evaluate that necessary element of the claim. Second, by specifically identifying the eight (8) alleged trade secrets at issue, Defendants' proposed questions for both Count I: Breach of Contract and Court II: Trade Secret Misappropriation will assist the jury by focusing its deliberations on the items actually at issue in the case. Finally, Defendants' proposed questions relating to damages clarify that any damages awarded must actually be caused by Defendants' wrongful conduct. *See* Modern Federal Jury Instructions § 77-3 ("[C]ompensatory

---

[10] *See* Plaintiffs' proposed special verdict questionnaire at Dkt. No. 118 and Defendants' proposed jury verdict form at Dkt. No. 129.

damages [are only available] for injuries that a plaintiff proves were proximately caused by a defendant's allegedly wrongful conduct.").

Defendants object to any verdict form questions relating to punitive damages, because the facts do not warrant punitive damages, punitive damages are precluded by Rule 37(c)(1) or, at a minimum, bifurcation is appropriate. *See* Section IV, *supra*. Defendants further object to any verdict form questions relating to punitive damages, including Question 6 proposed by SGS, that fail to clarify that such damages are not available for SGS's breach of contract claim. *See id.*

Dated: March 9, 2018

Respectfully submitted,

By:_____
Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

Meghan H. Magruder (*pro hac vice*)
Brandon R. Keel (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
mmagruder@kslaw.com
bkeel@kslaw.com

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 9, 2018, I served a true and correct copy of the foregoing

document using the Court's ECF system, which will send notice to all counsel of record.

By:_____

Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

`