Jury Copy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

GREGG A. SPINDLER AND SUSAN L. SPINDLER, D/B/A SGS STATISTICAL SERVICES,

Plaintiffs,

v.

Civil Action No. 5:15-cv-779 (TJM/TWD)

VIRGINIA ELECTRIC AND POWER COMPANY D/B/A DOMINION VIRGINIA POWER; AND NORTH AMERICAN TRANSMISSION FORUM, INC.,

Defendants.

**JURY VERDICT FORM**

**<< ALL JURORS MUST AGREE ON ALL ANSWERS >>**

**Breach of Contract Against Dominion**

1. Did SGS prove that Dominion breached its contract with SGS?

Yes ✓ No ____

**If you answered "no" to Question 1, go to Question 4. If you answered "yes" to Question 1, go to Question 2.**

2. Did SGS prove that Dominion's breach of contract was the cause of any damages that SGS sustained?

Yes ✓ No ____

**If you answered "no" to Question 2, go to Question 4. If you answered "yes" to Question 2, go to Question 3.**

3. What amount of damages, if any, did SGS prove that Dominion's breach of contract caused SGS to sustain?

$ [illegible] 145,100

**Go to Question 4.**

## Trade Secret Misappropriation

4. Did SGS prove that SGS possessed a trade secret in any of the following items:

| No. | Description | Yes | No |
|---|---|---|---|
| 1. | SGS Study Data Requirements | | ✓ |
| 2. | Pre-screening methodology (through SGS Cause Codes 10 and 11) | ✓ | |
| 3. | Combined pre-screening (through SGS Cause Codes 10 and 11) and Six Sigma screening methodology | ✓ | |
| 4. | Use of pre-screening and Six Sigma screening for the computation of "per circuit" and "per 100 mile" metrics for individual outage cause categories | ✓ | |
| 5. | Use of pre-screening and Six Sigma screening for the computation of "per circuit" and "per 100 mile" metrics for aggregations of outage cause code categories | ✓ | |
| 6. | Use of a 0 to 100 scale for scoring outage cause-specific performance metrics and aggregations thereof | | ✓ |
| 7. | Novel assignment of "100" for top performance | | ✓ |
| 8. | TACS composite scoring methodology | | ✓ |

**If your answers to Question 4 are all "no," go to Question 9. If you answered "yes" for any item, go to Question 5.**

5. <u>**Trade Secret Misappropriation Claim Against Dominion**</u>: Answer this Question 5 <u>only</u> if you found that Dominion breached its contract in response to Question 1. If you found that Dominion did not breach its contract, skip this Question 5 and go to Question 6.

As to the claim of trade secret misappropriation against Dominion, and only with respect to any alleged trade secrets for which you answered "yes" in Question 4, did SGS prove that Dominion used such trade secret(s) in breach of its contract with SGS?

Yes ✓ No _____

**Go to the Question 6.**

6. <u>Trade Secret Misappropriation Claim Against NATF</u>: Only with respect to any alleged trade secrets for which you answered "yes" in Question 4, did SGS prove that NATF (a) had knowledge of SGS's claim of trade secret rights to the trade secret(s) and (b) used such trade secret(s) as a result of NATF's discovery of the trade secret(s) through improper means?

   Yes ✓ No ____

   **If your answer to Question 6 is "no" and your answer to Question 5 is either "no" or you were instructed to skip Question 5, go to Question 9. If you answered "yes" to either Question 5 or Question 6, go to the Question 7.**

7. Did SGS prove that SGS sustained damages that were caused by either or both Defendants' trade secret misappropriation?

   NATF: Yes ✓ No ____

   Dominion: Yes ✓ No ____

   **If your answer to Question 7 is "no," go to Question 9. If you answered "yes" to Question 7, go to Question 8.**

8. What amount of damages, if any, did SGS prove were caused by either or both Defendants' trade secret misappropriation?

   Total $ 556,380

   Percent attributable to NATF 80 %

   Percent attributable to Dominion 20 %

   (must add up to 100%)

   **Go to Question 9.**

**Unfair Competition Against NATF**
**(Misappropriation of Proprietary Information in Bad Faith)**

9. Did SGS prove that NATF misappropriated SGS's proprietary information in bad faith?

Yes ✓ No ____

**If your answer to Question 9 is "no," go to Question 12. If you answered "yes" to Question 9, go to Question 10.**

10. Did SGS prove that SGS sustained damages that were caused by NATF's bad faith misappropriation of SGS's proprietary information?

Yes ✓ No ____

**If your answer to Question 10 is "no," go to Question 12. If you answered "yes" to Question 10, go to Question 11.**

11. What amount of damages, if any, did SGS prove were caused by NATF's bad faith misappropriation of SGS's proprietary information?

$ ~~1,854,600~~ 1,298,220

**Go to Question 12.**

**Total Compensatory Damages**

12. If you awarded any compensatory damages in response to Questions 3, 8, or 11, please state the total amount of compensatory damages owed by each Defendant keeping in mind that there is no double recovery for the same loss.

NATF $ 1,743,324

Dominion $ 256,376

**Go to Question 13.**

## Punitive Damages

13. NOTE: Answer this Question only if you find that (a) one or both Defendants are liable for trade secret misappropriation or (b) NATF is liable for unfair competition. If you did not find one or both Defendants so liable, skip this Question and go to "Instructions to the Foreperson" at the end of this form.

    Did SGS prove that such acts of trade secret misappropriation or unfair competition were undertaken maliciously or wantonly with regard to Plaintiffs' rights?

    NATF:      Yes __✓__        No _____

    Dominion:  Yes _____        No __✓__

    **Go to "Instructions to Foreperson" at the end of this Form.**

**Instructions to the Foreperson:** Once you have recorded the jury's answers to the questions above, please sign and date this page in the spaces provided below. Then inform the Clerk of the Court that you have finished deliberating.

Dated: __3/14/18__, 2018
Syracuse, New York

FOREPERSON          ***NAME REDACTED